# Richmond.

## HUTCHINGS AND OTHERS v. COMMERCIAL BANK OF DANVILLE AND OTHERS.

### JANUARY 31, 1895.

### Absent, Riely, J.

1. CONSTRUCTION OF STATUTES—*Omitted Words Supplied—Married Women's Act, 1878.*—Statutes must be interpreted according to their intent and meaning, and not always according to the letter. And, while courts should not depart from the letter except where the duty is plain, yet, if the omission of a word makes the whole act incongruous and unintelligible, and leads to absurd results, and it is manifest that the omission was an inadvertence, and the omitted word can be readily supplied from the context, it is the plain duty of the court to supply the omission. Applying this rule to the act of Assembly, approved March 14, 1878, commonly called the Married Women's Act, the word " not" should be inserted in line 16 of section 2, immediately in front of the words " n conflict."

2. EQUITABLE SEPARATE ESTATES—*Curtesy.*—Where a wife has an equitable separate estate, of which she has the power of disposition by will, which power she exercises, the surviving husband is not entitled to curtesy, though all the common-law requisites therefor exist. *Chapman v. Price,* 83 Va. 392, approved.

   LEASE—*Death of Tenant.*—Where a tenant dies pending a lease, the lease continues the property of his estate, and the estate of the tenant is liable for the rent contracted to be paid; and, while the landlord may sue out a distress warrant against the under tenant, if any, yet he is not obliged to do so, and his failure will not release the estate of the tenant.

Appeal from two decrees of the Circuit Court of the city of Danville, one rendered June 11, 1891, and the other March 24, 1892, in a suit in chancery, wherein the appellee, the

Commercial Bank of Danville, Va., was the complainant, and the other appellees and the appellants were the defendants.

*Reversed.*

The opinion states the case.

*E. E. Bouldin,* for appellants.

*Peatross & Harris,* for the appellee, the Commercial Bank of Danville, Va.

HARRISON, J., delivered the opinion of the court.

In April, 1890, the Commercial Bank of Danville, Va., filed its bill in the Circuit Court of Danville against John R. Hutchings, P. H. Boisseau, administrator c. t. a. of Sue R. Hutchings, deceased, Lucy Allen Hutchings and Sue Hutchings, infant children of Sue R. Hutchings, deceased, and J. D. Blair, seeking to subject the interest of said John R. Hutchings, as tenant by the curtesy, in the separate real estate of his wife, Sue R. Hutchings, to the payment of a certain debt due said bank from said John R. Hutchings; and, further, to settle certain accounts between the estate of Sue R. Hutchings and John R. Hutchings, and to subject the separate estate of Sue R. Hutchings to a debt due by her, as indorser for said John R. Hutchings, and to have an account of the money advanced by John R. Hutchings to his wife in erecting a dwelling-house upon her lot, and to have anything thus shown to be due said John R. Hutchings applied to the payment of the debt due plaintiff.   Answers were filed, and the cause referred to a commissioner, who made a full report of all the facts and the evidence, and then it came on to be heard by the court upon exceptions taken to said report by both sides.   The court, by a decree dated June 11, 1891, partially disposed of the prin-

ciples of the cause, and recommitted the same for further enquiries; and under this order a second report was made, to which exceptions were taken, and on the 24th day of March, 1892, the court entered a second decree, fully settling the principles of the cause and the rights of the parties. It is from these two decrees that an appeal was allowed to this court. On the 6th day of April, 1893, this court delivered its opinion affirming the decrees appealed from, and on the 21st of June, 1893, a rehearing was granted; and we are now called upon to decide the case upon said rehearing.

It appears from the record that Mrs. Sue R. Hutchings, late of Danville, left a will, which was duly probated in said city on the 14th day of January, 1889, in which she gives to her two children all her real and personal estate. The real estate passing under this will consisted of the following separate estate of Sue R. Hutchings: First, a house and lot on West Main street, in Danville, which was conveyed as a gift, by her father, Thomas B. Doe, by deed dated January 10, 1881, to a trustee for the separate use and benefit of the said Sue R. Hutchings, for her to have, use, and enjoy the same, or her assigns, forever, free from debts and liabilities of her husband. Second, a lot on Broad street in said city, bought by Mrs. Hutchings at the sale for partition of her father's lands, and paid for with her interest in the estate of her father, and conveyed, by deed dated April 16, 1884, by the sale commissioner (Mrs. Hutchings and her husband, John R. Hutchings, uniting in the deed), to a trustee for said Sue R. Hutchings, in trust for the sole and separate use of the said Sue R. Hutchings, the wife of said John R. Hutchings, to sell, convey in trust, or devise the said real estate as the said Sue R. Hutchings may desire. Third, an undivided one-third interest in a lot on Broad street in said city, bought by said Sue R. Hutchings at the sale for partition of her father's lands, and paid for with her interest in the estate of her father, which was

conveyed by mistake, by the sale commissioner, to John R. Hutchings, and subsequently, by deed dated June 21, 1888, in which said mistake was recited, conveyed by said John R. Hutchings and Sue Hutchings to a trustee for the sole and separate use of said Sue R. Hutchings, and for her to sell, convey, and otherwise dispose of as she pleases. Fourth, an undivided one-seventh interest in certain unsold lands lying just outside the said city, and belonging to the estate of Thomas B. Doe, the father of Mrs Hutchings, to which one-seventh interest she is entitled as one of the heirs of said estate.

It is insisted by the appellees that these lands, being acquired since the act known as the "Married Woman's Law" (see Acts 1877-'78, p. 247) and before the adoption of the Code of 1887, and held by Mrs. Hutchings subject to the provisions of said act; and whether or not her husband has curtesy in them is to be determined solely by that act, without reference to the law as it was prior thereto. The appellees further insist that said act is to be so construed that when there is a conflict between it and the deed or deeds under which the separate estate is held the act must prevail. On the other hand, it is contended by appellants that the act did not mean to create a conflict between it and the separate estate as created by the deed; that it was only intended to protect married women in their property rights when they were not otherwise protected; that said statute did not destroy the equitable separate estates created by deed, devise, etc., but in terms recognized and excepted them from its operation.

The second section of the act in question (Acts 1877-'78, p. 248) provides as follows:

"All real and personal estate hereafter acquired by any woman, whether by gift, grant, purchase, inheritence, devise or bequest, shall be and continue her sole and separate estate subject to the provisions and limitations of the

preceding section, although the marriage may have been solemnized previous to the passage of this act; and she may devise and bequeath the same as if she were unmarried ; and it shall not be liable to the debts and liabilities of her husband: provided that nothing contained in this act shall be construed to deprive the husband of curtesy in the wife's real estate, nor the wife of dower in her husband's estate: and provided further, that the sole and separate estate created by any gift, grant, devise, or bequest shall be held according to the terms and powers and be subject to the provisions and limitations thereof, and to the provisions and limitations of this act, so far as they are in conflict therewith," etc.

It would appear from the last words quoted from the act that equitable separate estates are made subject to the provisions of the act, and yet, just preceding these words, the act declares:

"And provided further, that the sole and separate estate created by any gift, grant, devise or bequest, shall be held according to the terms and powers, and to the provisions and limitations thereof."

Here we are confronted with an irreconcilable conflict in the act itself, in this: that in the same sentence equitable separate estates are recognized, preserved, and upheld, and at the same time destroyed by being made subject to the provisions of the act. It is clear that the act intended to recognize and preserve equitable separate estates; otherwise, reference to them was useless. The latter part of the section just quoted makes equitable separate estates subject to the provisions of the act, "so far as they are in conflict therewith." In the act of April 4, 1877, the word "not," just before the word "in," is in the enrolled bill, but omitted in the printed acts. If this were all, the difficulty would be easily removed, for in such cases the enrolled bill would govern (*Spangler* v. *Jacoby*, 58 Am. Dec. on p. 573), but when this section was amended and re-enacted by the act of March 14, 1878, the word "not" was omitted in both the enrolled bill and the printed acts. The word "not" having been inadvertently

omitted from the original act, its omission from the amendment is not surprising, in the hurry of legislation.    The omission of the word "not" at the point indicated makes the whole act incongrous and unintelligible, while, with that word incorporated, it is easily understood, clear, and makes the whole act harmonious.    It is apparent that the omission was an inadvertence.    To adopt a literal construction of the act, as it stands, would lead to absurd results; and we cannot suppose the legislature to have intended such results.    We appreciate the danger, and consequently the great caution to be exercised by courts, in construing statutes, not to add to or take from them one jot or tittle, except in cases where the duty is plain, in order to give an intelligent effect to the statute, and thereby carry out the manifest intent of the legislature.    It will be observed that in this case the legislature manifested its intention by having the word "not" incorporated in the original act, as shown by the enrolled bill, and that all legislation on the subject since the amendment of March, 1878, has been careful to uphold and preserve equitable separate estates.    See Code 1887, section 2294, which provides as follows:

"Nothing contained in the preceding sections of this chapter shall be construed to prevent the creation of equitable separate estates.  Such estates shall not be deemed to be within the operation of said sections, but they shall be held according to the provisions of the respective settlements thereof and shall be subject to, and governed by the rules and principles of equity applicable to such estates."

If evidence, outside the amended act of March, 1878, itself, were permissible to demonstrate the intent of the legislature, and to show that the omission of the word "not" in said act was a mere inadvertence, the prior and subsequent legislation on the same subject ought to be persuasive to establish that fact.    Sutherland, a learned author on Statutory Construction, says: " When one word has been erroneously used for

another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied".—citing a large number of authorities—and adds: "This is but making the strict letter of the statute yield to the obvious intent." Suth. St. Const., sec. 260, p. 341. The same author says to "enable the court to insert in a statute omitted words, the intent thus to have it read must be plainly deducible from other parts of the statute." It is plainly deducible, from other portions of this act, that the word "not" was inadvertently omitted. Another author says: "You must not violate the spirit by pretending to protect the letter of the law." Potter's Dwar. St., p. 129, sec. 23, rule Vattel. Statutes must be interpreted according to the intent and meaning, and not always according to the letter. Potter's Dwar. St., 144. See, also, End. Interp. St., ch. 11, § 295, p. 399; and, also, *Church of Holy Trinity* v. *U. S.*, 143 U. S. 457; *Matthews' Case*, 18 Gratt. 989; see, also, Burk's Property Rights of Married Women in Virginia, p. 75, where the view here taken is forecast by the author. The omission of the word "not" in this act makes the obvious intent of the law impossible of being effected; its insertion makes the plain reason of the law prevail over the letter. We have said enough to show that the insertion of the word "not" in the second section of the act of March 14, 1878, in the sixteenth line of that section from the top, between the words "are" and "in," making the sentence in the line read, "so far as they are not in conflict therewith," is necessary to carry out the manifest intent of the legislature, and also to show that its insertion is the performance of a judicial duty, sanctioned by bundant authority of the highest repute.

Under this Married Woman's Law (Acts 1877-78, pp. 247, 248), read with the aid of the light thrown upon it by the foregoing interpretation, it is plain that the legislature recognized and carefully upheld and preserved all equitable sepa-

rate estates, when it said: "And provided further that the sole and separate estate created by any gift, grant, devise or bequest, shall be held according to the terms and powers, and be subject to the provisions and limitations thereof."

With this act thus construed, there is little difficulty in determining the rights of John R. Hutchings as tenant by the curtesy in the separate real estate of his wife, Sue R. Hutchings. The undivided one-seventh interest of said Sue R. Hutchings in the unsold lands belonging to the estate of her father, Thomas B. Doe, lying just outside the city of Danville, is clearly separate legal estate, held under and by virtue of the act of 1877-'78; and inasmuch as all the requisites for curtesy exist, viz., marriage, seisin by the wife of estate of inheritance during coverture, birth alive of issue, and death of wife leaving husband surviving, it follows that the said John R. Hutchings is entitled to curtesy in the interest of his wife in this land, although she has devised said land to her children, the act providing "that nothing contained therein shall be construed to deprive the husband of curtesy in the wife's real estate."

As to the house and lot on Main street, held by a trustee for Mrs. Sue R. Hutchings under a deed from her father, Thomas B. Doe, and a lot on Broad street, held by a trustee for Mrs. Hutchings under a deed from the sale commissioner, united in by her husband, and the undivided one-third interest in another lot on Broad street, held by a trustee for Mrs. Hutchings under a deed from John R. Hutchings and his wife, each more fully heretofore described, these three properties represent the equitable separate estate of Mrs. Sue R. Hutchings, and must be governed and controlled by the terms and powers and subject to the provisions and limitations of the respective deeds under which the same is held. The provisions and limitations in these three deeds, setting forth Mrs. Hutchings' power over the property conveyed therein, have

already been recited; and, without prolonging this discussion further, it is sufficient to say that the estate conveyed in each was so limited as to give the wife the property, and deprive the husband of curtesy therein, provided she exercised her right to dispose of said properties by will. This she has done, leaving said property to her children. This case is fully covered and must be controlled by the doctrine laid down by this court in the case of *Chapman* v. *Price*, 83 Va. 392. The court is, therefore, of opinion that the Circuit Court of Danville erred in sustaining the exception taken by the appellees to the commissioner's report, and in holding that John R. Hutchings was entitled to curtesy in the property held under these three deeds, and therefore erred in appointing a receiver, with direction to rent out said properties with a view to applying the rents to the payment of the debts of said John R. Hutchings.

The second assignment of error is that the court erred in sustaining the exceptions taken by J. D. Blair and the Commercial Bank to the commissioner's report for having reported that Mrs. Sue R. Hutchings' estate was only indebted to J. D. Blair for the rent of a certain warehouse property leased by Mrs. Hutchings from the time of the commencement of the lease until the death of Mrs. Hutchings. It appears from the record that on the 26th day of September, 1888, Mrs. Sue R. Hutchings leased from J. D. Blair one-sixth interest in a certain warehouse in Danville for three years from the 1st day of October, 1888, and ending the 1st day of October, 1891, at $400 for the first year, and for the second and third years each $500. In addition, the lessee was to pay all taxes, assessments, levies, water and gas rents, fire insurance, and ordinary and temporary repairs, etc., which may be assessed against J. D. Blair, as one-sixth owner of the warehouse, during each of said three years' lease. It further appears that Mrs. Hutchings executed a deed of trust, contemporaneously with the lease, upon certain real estate owned by her, securing the

amount due under the lease to Blair.   Mrs. Hutchings and others, partners with herself in the warehouse business, took possession of the property under the lease; and on the 15th day of December, 1888, Mrs. Hutchings died, the surviving partners continuing to occupy the property until the end of the lease.   The master commissioner reported that there was due to J. D. Blair from the estate of Sue R. Hutchings, under her contract of lease, the sum of $1,499, with interest on $1,400, part thereof, from January 1, 1892, till paid; and further ascertained that Mrs. Hutchings' estate was only primarily bound for 2½ months' rent and interest thereon, amounting to $94.50, and that Mrs. Hutchings was only bound secondarily, or as surety, for the residue; that those who had occupied the property after her death were primarily bound for the residue accruing after her death.

To this action of the commissioner, exception was taken by the bank and J. D. Blair, and sustained; the court decreeing that Mrs. Sue R. Hutchings was primarily bound to Blair for the whole of the rent, $1,499, with interest as aforesaid.   Mrs. Hutchings' death did not release her estate from her obligation under the lease from Blair; the lease continued the property of her estate, and the liability to pay what she had contracted to do also continued on her estate.   The evidence does not show that Blair ever canceled or modified the lease, nor does it appear that he ever looked to any one else for the rent accruing under the said lease; and while, under the statute, he had a right of distress against the property of any sub-tenant of Mrs. Hutchings, he was not bound to exercise that right, and she could not compel him to do so.   The decree sustaining this exception to the commissioner's report was plainly right.

The third assignment of error alleges that the court erred in sustaining an exception taken by the bank to the commissioner's report for not crediting on the indebtedness of J. R. Hutchings to his wife the sum of $1,883.75, with interest on same from

December 1, 1887, to July 27, 1891, shown to have been paid by him, out of his own money, to her, after his indebtedness to her accrued. It appears from the evidence that J. R. Hutchings was indebted to his wife in the sum of $2,386.04, and that while thus indebted he advanced his wife, out of his own means, the sum of $1,883.79. It was proper that the amount thus advanced by him for her out of his own means, with its accrued interest, should be credited upon the amount he owed her, and therefore the court did not err in sustaining this exception to the report of the commissioner.

For the foregoing reasons, we are of opinion that the decrees of the Circuit Court of Danville of the 11th day of June, 1891, and the 24th day of March, 1892, appealed from, are erroneous, and must be reversed, in so far as they hold that John R. Hutchings is entitled to curtesy in the separate equitable estate of his wife, Sue R. Hutchings, held under the three deeds mentioned herein—one from Thomas B. Doe to J. T. Brightwell, trustee, dated June 10, 1881; one from E. E. Bouldin, commissioner, *et al.*, to S. M. Embry, trustee, dated April 16, 1884, and the third from John R. Hutchings and wife to S. M. Embry, trustee, dated June 21, 1888—and in so far as said decrees appoint P. H. Boisseau, sergeant, of Danville, a receiver to take charge of said three properties, or either of them, and rent the same, collect the rents and report his acts in that behalf to the court. The court is further of opinion that in all other respects there is no error in the said decrees.

REVERSED.

NOTE BY THE REPORTER.—I am authorized by Judge Riely to state that, while for personal reasons he did not sit in the case, or take any part in its decision, yet, after the conclusion was reached, and the opinion was prepared and read to him, he fully concurred in it.