**AFA DISTRIBUTING CO., INC.,**
Appellant,

v.

**PEARL BREWING COMPANY,**
Appellee.

No. 72–1939.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 6, 1972.

Decided Jan. 3, 1973.

Alan Kay, Washington, D. C. (Mc-Cormack & Bregman, Washington, D. C., and Stanley Perry, Alexandria, Va., on brief), for appellant.

Laidler B. Mackall, Washington, D. C. (Steptoe & Johnson, Washington, D. C., and Alfred D. Swersky, Alexandria, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and CRAVEN, Circuit Judge.

CRAVEN, Circuit Judge:

■ This litigation is a thus far unsuccessful effort by a local Virginia beer distributing company (AFA) to prevent a Texas manufacturer of beer (Pearl) from terminating an exclusive franchise to distribute Country Club Malt liquor in northern Virginia. The complaint recites that there is jurisdiction under 28 U.S.C. § 1331 but is silent as to what, if any, federal question is presented. That is not enough. Wright, Law of Federal Courts 59–62 (2d ed. 1970). There is jurisdiction, however, under 28 U.S.C. § 1332 by reason of diversity of citizenship.

■ The parties agree that but for a recently enacted statute of Virginia (Va.Code Ann. § 4–80.2) Pearl was free to terminate the beer distributing franchise without cause. They quite understandably disagree as to the application and meaning of the statute. The district judge construed the statute favorably to Pearl and dismissed AFA's complaint. We think he should have abstained to permit state court interpretation of this exceedingly difficult and incredibly ambiguous statute. We therefore vacate the district court's decision interpreting the statute, but affirm, for other reasons, the dismissal of the complaint.

AFA is a distributor of beer in northern Virginia, and Pearl is a Texas brewery engaged in the manufacturing and sale of beer. Since July 3, 1962, AFA has had an agreement with Pearl by which AFA has distributed certain of Pearl's products. On May 1, 1972, Pearl terminated the agreement and gave the exclusive right to distribute its products to another distributor of beer in the northern Virginia area. Accepting the plaintiff's allegations as true for the purposes of the motion to dismiss, the termination of AFA's distributorship was without just cause and without notice to AFA. AFA's primary contention is that the termination was in violation of Va.Code Ann. § 4–80.2.

Va.Code Ann. § 4–80.2, enacted in 1964, provides in relevant part:

(a) It shall be unlawful for any wholesaler, vintner, winery or brewery, or any officer, agent or representative of any winery or brewery:

. . . . . .

(2) Unfairly, without due regard to the equities of such wholesaler, vintner, winery or brewery and without just cause or provocation, to cancel or terminate any agreement or contract,

written or oral, or the franchise of such wholesaler, vintner, winery or brewery existing on January one, nineteen hundred sixty-four, hereafter entered into, to sell the beer or wine manufactured by the winery or brewery.

Section 2 of this statute has an obvious ambiguity. The participial phrase, "existing on January one, nineteen hundred sixty-four," may modify either "franchise" or "such wholesaler, vintner, winery or brewery." The district court in interpreting the statute read "existing on January one, nineteen hundred sixty-four" to modify "wholesaler, vintner, winery or brewery" and, "hereafter entered into" to modify "any agreement or contract." Thus, under the district court's interpretation, distributorship arrangements entered into before January 1, 1964, would not be protected by the statute and breweries established after January 1, 1964, would not be subject to the statute. Since the district court found that the statute applied only to contracts entered into after January 1, 1964, and since the contract between Pearl and AFA was entered into in 1962, the court dismissed the action.

It would make better sense, we think, to read "existing on January one, nineteen hundred sixty-four, hereafter entered into" as modifying "agreement or contract." As thus interpreted the statute would apply to present and future distributorship agreements and provide protection for distributors which the legislature apparently intended. This result can be reached if the comma between "sixty-four" and "hereafter" is interpreted to mean "or." The district judge, doubtless advertent to Virginia case law, felt that the statute could not be so interpolated in light of Virginia rules of statutory construction. In Johnson v. Barham, 99 Va. 305, 38 S.E. 136 (1901), the Virginia Supreme Court of Appeals stated:

It is safer in a case which admits of doubt, where the court finds itself at all involved in conjecture as to what was the legislative intent, that the particular object which may reasonably be supposed to have influenced the legislature in the particular case should fail of consummation than that courts should too readily yield to a supposed necessity, and exercise a power so delicate and so easily abused as that of adding to or taking from the words of the statute. In such a case, as has been said by courts in a different connection, "to doubt is to be resolved."

38 S.E. 137–138. Yet, the Virginia Supreme Court of Appeals has on occasion added a word to a statute. Hutchings v. Commercial Bank, 91 Va. 68, 20 S.E. 950 (1895).

Perhaps, also, the district judge was motivated by a wish to avoid a constitutional question. If the statute is interpreted to apply to contracts entered into before its effective date, the constitutionality of the statute under the Contract Clause, U.S.Const. art. I, § 10, might be brought into question. Because of the ambiguity in the statute and because of an inchoate constitutional question, we think the district court should have applied the abstention doctrine. In this case, whether we adopt the district court's interpretation or give the statute a construction we find more sensible, our decision, although the law of this case, would necessarily be a forecast as to future interpretations.

In this situation a federal court . . . is asked to decide an issue . . . which may be displaced tomorrow by a state adjudication. . . . The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court.

Railroad Comm'n v. Pullman Co., 312 U. S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941) (citations omitted).

 We recognize that mere difficulty in determining state law does not in itself justify a federal court's declining to exercise its jurisdiction. *Compare* Martin v. State Farm Mut. Auto

Ins. Co., 375 F.2d 720, 722 (4th Cir. 1967), *with* United Services Life Ins. Co. v. Delaney, 328 F.2d 483 (5th Cir.), cert. denied, Paul Revere Life Ins. Co. v. First National Bank, 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298 (1964). Congress has adopted the policy of opening the federal courts to litigants in diversity cases, and we cannot close the door to the federal courts merely because such a case involves a difficult question of state law. Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). *See*, Kurland, Toward a Co-operative Judicial Federalism: The Federal Court Abstention Doctrine, 24 F.R.D. 481 (1959); Note, Federal-Question Abstention: Justice Frankfurter's Doctrine in an Activist Era, 80 Harv.L.Rev. 604 (1967). Thus this judge-made doctrine of abstention may be applied only where there are special circumstances. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). *See also*, Wright, Law of Federal Courts 196–208 (2d ed. 1970); IA Moore's Federal Practice ¶ 0.203 [1] (1965).

■■ Present in this case is such a special circumstance justifying abstention. Should the state courts determine, as the court below held, that Va.Code Ann. § 4–80.2 applies only to contracts entered after the statute's effective date, no Contract Clause question would arise.

In the application of the abstention doctrine,

> no principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them.

Harrison v. NAACP, 360 U.S. 167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959). The well-settled doctrine that a federal court will not anticipate a question of constitutional law and the special weight that doctrine carries in the maintenance of harmonious federal-state relations requires that a district court stay its proceedings until a potentially controlling state-law issue is authoritatively put to rest. United Gas Pipe Line Co. v. Ideal Cement Co., 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Louisiana Power & Light Co. v. Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

Since in this case the state law is unclear and a state court decision could conceivably avoid a constitutional decision, abstention is appropriate. *See*, Fornais v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

■ Although the failure of the parties to raise the abstention issue either at trial or on appeal is entitled to some consideration, the public policy underlying the application of the abstention doctrine is so strong that we notice its application *ex mero motu*. That abstention is not urged by a party does not mean that the point lacks merit. Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1970). It is true that abstention costs in terms of time and money. But in the relatively rare instances of application it is not too high a price to pay for federalism. Clay v. Sun Ins. Office, Ltd., 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); Chicago, B. & Q. R. R. v. North Kansas City, 276 F.2d 932 (8th Cir. 1960).

An additional justifying factor here is the invocation of federal diversity jurisdiction by a corporate plaintiff (AFA) itself a citizen of Virginia. Thus in requiring AFA to first proceed in state court to obtain an authoritative interpretation of the statute there is "little basis in fact for xenophobia—no reason to fear a provincial locally oriented" court. Crawford v. Courtney, 451 F.2d 489, 492 (4th Cir. 1971).

> [W]hen a person's involvement with a state is such as to eliminate any real risk of prejudice against him as a

stranger and to make it unreasonable to heed any objection he might have to the quality of its judicial system, he should not be permitted to choose a federal forum, but should be required to litigate in the courts of the state.

ALI, Study of the Division of Jurisdiction between State and Federal Courts 2 (1969 Official Draft). *See also,* Hearings on S. 1876 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 92d Cong., 1st Sess., pt. 1 at 2 (1971).

■■■■ Another special circumstance justifying abstention is the peculiarly exclusive dominion of the states over the control of distribution and sale of alcoholic beverages. Such control has been wholly preempted by the states. *See* California v. LaRue, 409 U.S. 109, 93 S. Ct. 390, 34 L.Ed.2d 342 (1972). Peripheral and episodic federal court interpretations of state statutory schemes of control are not desirable and could be harmful.

It is not easy to decide whether on remand the district court should retain jurisdiction. Since one of our reasons for ordering abstention is to avoid possible interference with the state scheme of alcoholic beverage control, the case comes close to *Burford*-type [1] abstention. Moreover, as we have explained, the federal question lurking within the statute arises only as a defense contention. Defendant Pearl is apparently content with state adjudication of that question, and plaintiff, AFA, has not pleaded the question and could not do so. Anticipation is not allowed. Wright, Law of Federal Courts 60 (2d Ed. 1970).

The rule as to dismissal or retention of jurisdiction, once rigid, Doud v. Hodge, 350 U.S. 485, 76 S.Ct. 491, 100 L.Ed. 577 (1956), is now somewhat flexible. Zwickler v. Koota, 389 U.S. 241, 244 n. 4, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). We think it the "better practice" on the facts of this case to require the parties to submit all questions to the state court.

The decision of the district court interpreting the statute will be vacated. Its order of dismissal, however, will be Affirmed.

---

1. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).