**BROWN–FORMAN CORPORATION, Plaintiff,**

v.

**The SOUTH CAROLINA ALCOHOLIC BEVERAGE CONTROL COMMISSION, Elliott D. Thompson, Sallie J. Scott, and Julius Murray, as members of the South Carolina Alcoholic Beverage Control Commission, and Nicolas P. Sipe, as Executive Director of the South Carolina Alcoholic Beverage Control Commission, Defendants.**

Civ. A. No. 86–1909–15.

United States District Court, D. South Carolina, Columbia Division.

Sept. 8, 1986.

---

R.W. Dibble, Jr., Robert E. Stepp, Robert T. Bockman, McNair Law Firm, Columbia, S.C., for plaintiff.

Edwin E. Evans, Deputy Atty. Gen., Alexandria B. Skinner, Staff Atty., Columbia, S.C., for defendants.

## ORDER

HAMILTON, District Judge.

This suit for declaratory judgment was brought by Brown-Forman Corporation (hereinafter "Brown-Forman") to determine the constitutionality of South Carolina Code Ann. § 61–7–100 (Law.Co-op.1976).[1] In addition to seeking a declaration that section 61–7–100 of the South Carolina Code (hereinafter "Affirmation Statute") violates the commerce clause of the United States Constitution, Brown-Forman sought a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining defendants [2] from enforcing this statute and from exercising any remedy against Brown-Forman because of its failure to comply with the statute. Jurisdiction is based on 28 U.S.C. §§ 1331 and 2201–2202.

By letter dated July 1, 1986, Brown-Forman notified the A.B.C. Commission that price affirmation statements filed June 3, 1986, on behalf of B–F Spirits, Ltd. and The Jos. Garneau Company were being withdrawn. (Plaintiff's Exhibit 7). In withdrawing the affirmation statements, Brown-Forman relied on its belief that the recent Supreme Court decision of *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, —— U.S. ——, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986), which declared New York's affirmation statute unconstitutional, was applicable to affirmation statutes of all states. On July 10, 1986, Nicholas P. Sipe, Executive Director of the A.B.C. Commission, informed Brown-Forman by letter that it was expected to comply with South Carolina law until a specific administrative or court ruling

---

1. Section 61–7–100 of the South Carolina Code is part of the statutory scheme regulating the importation and distribution of alcohol and alcoholic beverages in South Carolina. It requires every registered producer of alcoholic liquors to file an affirmation with the South Carolina Alcoholic Beverage Control Commission (hereinafter "A.B.C. Commission") certifying that the producer will not willfully sell or offer for sale any alcoholic liquors of a particular brand and proof in any state in the United States at a price lower than the price such liquors are sold or offered for sale to South Carolina wholesalers.

2. In its amended complaint, Brown-Forman named as defendants the A.B.C. Commission as well as each of its members in both their official and unofficial capacities. Defendants, however, moved for dismissal of the claims stated against the defendants individually, and Brown-Forman agreed to such a dismissal. The case proceeded, therefore, as against the A.B.C. Commission and its members in only their official capacities.

determined that compliance was no longer necessary. Furthermore, Brown-Forman was notified that if it failed to rescind its withdrawal of its price affirmation statements, the A.B.C. Commission would pursue its legal remedies. (Plaintiff's Exhibit 8).

Thereafter, on July 18, 1986, Brown-Forman filed the instant complaint, including its motion for a temporary restraining order. A hearing on the motion for a temporary restraining order was held on July 23, 1986, and resulted in defendants agreeing not to enforce the Affirmation Statute until a hearing on Brown-Forman's request for a preliminary injunction could be held.

On August 19, 1986, the day set for a hearing on Brown-Forman's request for a preliminary injunction, Brown-Forman requested, and defendants consented, to proceed with a bench trial on the merits. Because it appeared that a hearing on Brown-Forman's request for a preliminary injunction would involve the same underlying issues as a subsequent trial on the merits, the court, in the interest of judicial economy, proceeded to trial.[3]

As a matter preliminary to trial, the court considered defendants' request for the court to abstain from exercising jurisdiction over this action. Defendants urged the court to abstain in light of the abstention doctrine enunciated in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

"The purpose of *Burford* abstention is to prevent a federal court from interfering with a 'complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded.'" *Browning-Ferris, Inc. v. Baltimore County, Maryland,* 774 F.2d 77, 79 (4th Cir.1985) (quoting *Aluminum Co. v. Utilities Commission of North Carolina,* 713 F.2d 1024 (4th Cir.1983), *cert. denied,* 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722

(1984)). Thus, defendants urged the court to abstain because the Affirmation Statute is part of the comprehensive statutory scheme regulating alcoholic beverages in South Carolina and because an adequate state court procedure exists through which defendants could challenge the statute. This court, however, declined to abstain from exercising jurisdiction over this action.

*AFA Distributing Co. v. Pearl Brewing Co.,* 470 F.2d 1210 (4th Cir.1973), is illustrative of a situation requiring abstention by a federal court. In that case, AFA brought suit against Pearl to prevent Pearl from terminating AFA's exclusive franchise to distribute Country Club Malt Liquor. The Fourth Circuit held that in light of three special circumstances, the district court should have abstained from exercising jurisdiction over the matter. Relied upon to support the abstention doctrine were: (1) the lack of clarity of the state statute in question, creating the possibility that a state court decision would eliminate the need for a constitutional determination, (2) the party invoking federal jurisdiction would not be subject to provincial prejudice by abstention in light of its local citizenship, and (3) the peculiarly exclusive dominion of the states over the control of distribution and sale of alcoholic beverages making peripheral and episodic federal court interpretations of state statutory schemes of control undesirable and potentially harmful.

In *Vintage Imports, Ltd. v. Joseph E. Seagram & Sons, Inc.,* 409 F.Supp. 497 (E.D.Va.1976), however, the district court determined that abstention was not required because the case before it did not contain the special circumstances present in *AFA.* Moreover, the court reasoned that although the twenty-first amendment gives broad powers to regulate liquor to the states, its mere existence does not open the legislative gates for the states to vio-

---

**3.** As a result of proceeding directly to trial, defendants' previously filed motion to dismiss

was merged into the trial proceedings.

late other provisions of the United States Constitution. *Vintage*, 409 F.Supp. at 507.

■ The special circumstances of *AFA* are also not present in the instant case. Although defendants cite the lack of state decisions interpreting the Affirmation Statute as grounds for abstention, the statute does not appear to this court to be ambiguous in any material respect. Thus, a state court decision would not be expected to obviate the need for a constitutional determination. Second, Brown-Forman, a Tennessee corporation that invoked federal jurisdiction, would potentially be subject to provincial prejudice if forced by federal court abstention to proceed in the state courts of South Carolina.

Third, this court agrees with the court in *Vintage* that the twenty-first amendment does not mandate abstention. This court is not being called upon to interpret a state regulatory scheme as proscribed by *AFA*, but rather to apply federal constitutional principles to a state statute. When faced with an unambiguous state statute, a federal court should not abstain merely to await a decision on the matter by a state court. Rather, the federal court should proceed to decide the federal constitutional question. *Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971).

Finally, this court does not believe that the South Carolina statutory scheme regulating alcoholic beverages is as complex and intricate a body of legislation as the Texas oil and gas legislation at issue in *Burford*. Accordingly, for the foregoing reasons and based on the cited authorities, this court believes that abstention is not required in the instant case.

Following disposal of the preliminary matters, trial commenced. After receiving the testimony, carefully considering all the evidence, weighing the credibility of the one witness who testified on behalf of plaintiff, reviewing the exhibits and briefs, and studying the applicable law, this court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52, Fed.R.Civ.Proc. The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

## FINDINGS OF FACT

1. Brown-Forman is a corporation primarily engaged in the importation, manufacture, sale, and distribution of alcoholic beverages. Its products are sold in all fifty states, including South Carolina. In addition, some of its products are exported for sale in other countries. (Transcript at 31-32, 59).

2. The court finds the testimony of Leon R. Timmons, the only witness who testified at trial, to be both competent and credible. Mr. Timmons is the assistant secretary of Brown-Forman Corporation and is on the board of directors of B–F Spirits, Ltd. Although he is an attorney by training, he has been employed by Brown-Forman for six years and is generally familiar with Brown-Forman's sale of alcoholic beverages. (Transcript at 31, 58, 70).

3. S.C.Code Ann. § 61-7-100 (Law.Co-op.1976) requires every registered producer of alcoholic liquors to file an affirmation with the A.B.C. Commission certifying that the producer will not willfully sell or offer for sale any alcoholic liquors of a particular brand or proof in any state in the United States at a price lower than the price such liquors are sold or offered for sale to South Carolina wholesalers. (Transcript at 62). Brown-Forman imports alcoholic beverages into South Carolina and thus, until defendants agreed to temporarily refrain from enforcing § 61-7-100 as against Brown-Forman, was required to file the affirmation required by § 61-7-100. Until July 1, 1986, Brown-Forman maintained an affirmation on file with the A.B.C. Commission in compliance with South Carolina law. (Transcript at 59).

4. Twenty-two states have affirmation statutes similar to South Carolina's as part of the statutory scheme through which they regulate the sale of alcoholic beverag-

es. Eighteen states, termed "control states," purchase all alcoholic beverages that will be sold within their borders. The control states' purchase agreements with producers of alcoholic beverages contain price warranties which, in effect, are like South Carolina's Affirmation Statute. *See* Plaintiff's Exhibit 4. The common element of these statutes and contract provisions is that all require a producer of alcoholic beverages to affirm that its prices in that state are no higher than in any other state. (Transcript at 37–41).

5. There are three primary types of affirmation provisions: "retroactive," "prospective," and "simultaneous." "Retroactive" affirmation provisions require a producer of alcoholic beverages to affirm that its prices during a given month will be no higher than the lowest price at which the item was sold elsewhere during the previous month. "Prospective" affirmation provisions, however, require an alcoholic beverage producer to post a price list containing future prices for its products while affirming that these prices are no higher than those to be charged elsewhere. Accordingly, once a producer has posted prices in a "prospective" affirmation state, it is not free to change its prices elsewhere without obtaining permission from the "prospective" state's regulatory body to deviate from its posted price list.

Other affirmation provisions, including South Carolina's, are termed "simultaneous." "Simultaneous" provisions also require a producer of alcoholic beverages to affirm that its products will be sold in the affirmation state at prices which are no higher than those charged elsewhere. Under South Carolina's "simultaneous" statute, however, a producer of alcoholic beverages is not required to file a price list or to obtain permission from the A.B.C. Commission prior to changing its prices in other states. As long as the producer keeps its South Carolina prices as low as the lowest price charged elsewhere, the producer will remain in compliance with South Carolina's "simultaneous" Affirmation Statute. *See* Transcript at 60–62.

6. In its regular course of business, Brown-Forman maintains records entitled Depletion Flash Reports. *See* Plaintiff's Exhibits 1, 2, and 3. Depletion Flash Reports indicate case sales for Brown-Forman products in a particular territory or state. Additionally, Depletion Flash Reports compare a product's current case sales with its previous year's sales and with its projected sales quota for the current year. (Transcript at 32–35).

7. The June, 1987,[4] Depletion Flash Report for Jack Daniel's Black Label reveals that in South Carolina, Jack Daniel's Black Label has attained 105 percent of its projected sales quota. *See* Plaintiff's Exhibit 1, p. 1. This figure reveals that the South Carolina price for Jack Daniel's Black Label is at a level consistent with consumer demand. (Transcript at 35).

By comparison, this Depletion Flash Report also reveals that in some states, such as Arizona, demand for Jack Daniel's Black Label is lower than it is in South Carolina. The Depletion Flash Report reveals that in Arizona case sales of Jack Daniel's Black Label have reached only seventy-two percent of the projected quota for the fiscal year. This figure reveals that in Arizona Jack Daniel's Black Label is not competitive with other bourbons because it is overpriced. (Transcript at 35–36).

Brown-Forman believes that Jack Daniel's Black Label is over-priced in Arizona, and therefore, exercising good business judgment, desires to lower its Arizona price for that product expecting to increase sales. However, to remain in compliance with South Carolina law, Brown-Forman may not lower its Arizona price for Jack Daniel's Black Label without concurrently lowering its South Carolina price for that product. Brown-Forman believes that its South Carolina price for Jack Daniel's Black Label is consistent with consumer

**4.** The year "1987" refers to Brown-Forman's fiscal year rather than the calendar year. (Transcript at 34).

demand and therefore, does not wish to lower its South Carolina price. Thus, South Carolina's Affirmation Statute dictates the price Brown-Forman charges for Jack Daniels' Black Label in Arizona and keeps that price artificially high. (Transcript at 36, 62–63).

8. The June, 1987,[5] Depletion Flash Report for Canadian Mist reveals that in South Carolina Canadian Mist has attained 103 percent of its projected sales quota. *See* Plaintiff's Exhibit 2, p. 2. This figure reveals that the South Carolina price for Canadian Mist is at a level consistent with consumer demand. (Transcript at 42).

By further comparison, this Depletion Flash Report also reveals that in some states, such as Texas, demand for Canadian Mist is lower than it is in South Carolina. The Depletion Flash Report reveals that in Texas case sales of Canadian Mist have reached only sixty-seven percent of the projected quota for the fiscal year. This figure reveals that in Texas, Canadian Mist is not competitive because it is overpriced. (Transcript at 42–43).

Brown-Forman believes that Canadian Mist is over-priced in Texas, and therefore, exercising good business judgment, desires to lower its Texas price for that product expecting to increase sales. However, to remain in compliance with South Carolina law, Brown-Forman may not lower its Texas price for Canadian Mist without concurrently lowering its South Carolina price for that product. Brown-Forman believes that its South Carolina price for Canadian Mist is consistent with consumer demand and therefore, does not wish to lower its South Carolina price. Thus, South Carolina's Affirmation Statute dictates the price Brown-Forman charges for Canadian Mist in Texas and keeps that price artificially high. (Transcript at 43, 50, 62–63).

9. Situations similar to those described in Findings of Fact 7 and 8 also exist with respect to other Brown-Forman products. (Plaintiff's Exhibits 1, 2 and 3).

10. Absent the current regulatory scheme, Brown-Forman would attempt to increase its market share in below-quota states through selected price reductions. (Transcript at 50, 57).

11. Although, *inter alia,* an area's climate and the ethnic background of the local population affect drinking patterns, price is a significant factor affecting liquor sales. (Transcript at 36, 43, 47–48).

CONCLUSIONS OF LAW

Jurisdiction of this court is premised on 28 U.S.C. §§ 1331 and 2201. These sections confer jurisdiction upon the district court to render declaratory judgments in controversies arising under the Constitution, laws, or treaties of the United States.

The sole question for this court's determination is whether S.C.Code Ann. § 61-7-100 (Law.Co-op.1976), South Carolina's Affirmation Statute, violates the commerce clause of the United States Constitution, by impermissibly regulating commerce in other states. In a recent decision, the Supreme Court declared New York's affirmation statute to be invalid as violative of the commerce clause of the United States Constitution. *Brown-Forman Distillers Corp. v. New York State Liquor Authority,* —— U.S. ——, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986). Brown-Forman argues that as a result of this decision, South Carolina's Affirmation Statute should also be declared unconstitutional. Defendants propose, however, that South Carolina's Affirmation Statute is more closely related to the affirmation statute considered and upheld by the Supreme Court in *Joseph E. Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966), *reh'g denied,* 384 U.S. 967, 86 S.Ct. 1583, 16 L.Ed.2d 679 (1966), and therefore, that the instant case should be controlled by that decision. For the reasons stated below, the court believes that this case is not controlled by the decision in *Seagram v. Hostetter,* but rather by the principles enunciated in *Brown-Forman v. New York,* and that an application of those principles com-

**5.** *See supra* note 4.

pels the conclusion that South Carolina's Affirmation Statute violates the commerce clause of the United States Constitution.

In *Brown-Forman v. New York*, the Court found that New York's "prospective" affirmation statute constituted a direct regulation of interstate commerce. *Brown-Forman v. New York*, 106 S.Ct. at 2086. New York's statutory scheme required producers of alcoholic beverages [6] to file a price list before the twenty-fifth of each month containing a precise description of each item they intended to sell in New York with its per-bottle and per-case price. These prices would become effective on the first day of the second following month, and all of the producers' sales to wholesalers in New York were required to be at those prices. *Brown-Forman v. New York*, 106 S.Ct. at 2083.

In addition to filing the price list, producers selling alcoholic beverages in New York had to affirm that their listed prices were no higher than the lowest prices charged to any other wholesaler in any other state of the United States. *Id.* Thus, once producers posted prices in New York, they were not free to change their prices offered elsewhere without first seeking approval from the New York State Liquor Authority to change their New York prices. *Brown-Forman v. New York*, 106 S.Ct. at 2086.

However, South Carolina's statutory scheme for the regulation of alcoholic beverages does not require producers of alcoholic beverages to file a price list for their products with the A.B.C. Commission. Producers are required by S.C.Code Ann. § 61–7–100 (Law.Co-op.1976) to file a lowest price affirmation, but are free to change their prices elsewhere without seeking the prior approval of the A.B.C. Commission. They may lower their prices in other states and remain in compliance with South Carolina law as long as they also lower their South Carolina prices to the lowest price level offered elsewhere.

Thus, South Carolina's Affirmation Statute is correctly termed "simultaneous" rather than "prospective." *See* Finding of Fact 5.

The Court's decision in *Brown-Forman v. New York*, however, does not appear to be based solely on the "prospective" nature of the New York statutory scheme. The issue in *Brown-Forman v. New York*, as broadly framed by Justice Marshall, was whether New York's requirement that every liquor producer selling liquor in New York sell at a price that was no higher than the price charged elsewhere violated the commerce clause of the Constitution. *Brown-Forman v. New York*, 106 S.Ct. at 2082. In assessing the validity of this requirement under the commerce clause, the Court noted that the critical consideration was the overall effect of the statute on both local and interstate activity. *Brown-Forman v. New York*, 106 S.Ct. at 2084. The Court, therefore, centered its inquiry on whether the "practical effect" of New York's affirmation law was to regulate commerce in other states. *Brown-Forman v. New York*, 106 S.Ct. at 2085–2086. Accordingly, this court's inquiry must also focus on whether the "practical effect" of South Carolina's Affirmation Statute is to control the prices of Brown-Forman's products in other states.

As defendants assert, one effect of requiring Brown-Forman to lower its South Carolina prices if it lowers its prices elsewhere is merely to force Brown-Forman to forego available profits in South Carolina. South Carolina may legitimately regulate the sale of liquor within its borders and may constitutionally seek low prices for its residents. *Brown-Forman v. New York*, 106 S.Ct. at 2086. Therefore, this effect of South Carolina's Affirmation Statute is not extraterritorial and does not render the statute unconstitutional.

This court is constrained to conclude, however, that South Carolina's Affirmation Statute goes further and also has extraterritorial effects that render it un-

---

**6.** As used in this order, the term "producer of alcoholic beverages" also encompasses distillers and manufacturers of alcoholic beverages.

constitutional. Absent the current regulatory scheme, Brown-Forman would attempt to increase its market share in below-quota states through selected price reductions. *See* Findings of Fact 7, 8, 9, and 10. For example, Brown-Forman desires to decrease the prices of Jack Daniel's Black Label in Arizona and Canadian Mist in Texas to make those products more price competitive. *See* Findings of Fact 7 and 8. However, Brown-Forman is not free to lower these prices without concurrently lowering its South Carolina prices for these products. Moreover, Brown-Forman does not desire to lower its South Carolina prices for these products because their South Carolina prices are consistent with consumer demand in this state. *Id.* Thus, although Brown-Forman desires to lower its Arizona and Texas prices for these products, it refrains from lowering them to avoid lowering its South Carolina prices and foregoing available profits. *Id.*

This scenario well illustrates the extraterritorial effect of South Carolina's Affirmation Statute. It would be futile for Brown-Forman to lower its Arizona and Texas prices when the resulting increased sales would be largely offset by decreased profits caused by a concurrent South Carolina price reduction. Thus, South Carolina's Affirmation Statute causes Brown-Forman to refrain from lowering selected prices outside South Carolina and causes those prices to be artificially high. South Carolina has " 'project[ed] its legislation into [other States]' " by dictating a floor for liquor prices in other states, and therefore, its Affirmation Statute is unconstitutional. *Brown-Forman v. New York,* 106 S.Ct. at 2086 (quoting *Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 521, 55 S.Ct. 497, 499, 79 L.Ed. 1032 (1935)).

This court certainly recognizes, however, that although the Supreme Court employed broad language and sweeping principles in declaring New York's statute unconstitu-

tional, the majority in *Brown-Forman v. New York* expressly refused to overrule the Court's previous decision in *Seagram v. Hostetter.*[7] In footnote six of the *Brown-Forman v. New York* decision, the Court noted that although it did not necessarily attach constitutional significance to the differences between a "prospective" and a "retrospective" affirmation statute, because a "retroactive" statute was not presently before the Court it would not consider the continuing validity of *Seagram v. Hostetter.*[8] *Brown-Forman v. New York,* 106 S.Ct. at 2087.

Although the decision in *Seagram v. Hostetter* provides some guidance to this court, it does not mandate a decision upholding South Carolina's Affirmation Statute. *Seagram v. Hostetter* was decided in 1966 "when affirmation statutes were comparatively new and long before the proliferation of overlapping and potentially conflicting affirmation statutes that has taken place in the last two decades." *Brown-Forman v. New York,* 106 S.Ct. at 2088 (Blackmun, J., concurring).

Moreover, as a result of a series of stays granted during the pendency of that litigation, *Seagram v. Hostetter* was decided before the "retroactive" affirmation statute in question had been put into effect. *Seagram v. Hostetter,* 384 U.S. at 41, 86 S.Ct. at 1259. The Court noted that because the affirmation statute in question had not yet been put into effect,

> [t]he serious discriminatory effects of [the statute] alleged by [Seagram & Sons] on their business outside New York are largely matters of conjecture. It is by no means clear ... that [the statute] must inevitably produce higher prices in other States ... rather than the lower prices sought for New York. It will be time enough to assess the alleged extraterritorial effects of [the statute] when a case arises that clearly presents them.

---

7. In the 1966 case of *Seagram v. Hostetter,* the Court upheld a "retroactive" affirmation statute against an attack under the commerce and supremacy clauses of the Constitution. *Brown-Forman v. New York,* 106 S.Ct. at 2085.

8. *Seagram v. Hostetter* did not emerge unscathed, however, as is poignantly evident from Justice Blackmun's concurring opinion.

*Seagram v. Hostetter,* 384 U.S. at 43, 86 S.Ct. at 1260.

The instant case is, in fact, a case that clearly demonstrates the extraterritorial effect of South Carolina's Affirmation Statute. Brown-Forman is constrained to charge higher prices than it desires in states such as Arizona and Texas because of the existence of South Carolina's Affirmation Statute. *See* Findings of Fact 7, 8, 9, and 10. South Carolina's Affirmation Statute does "inevitably produce higher prices in other States," *Seagram v. Hostetter,* 384 U.S. at 43, 86 S.Ct. at 1260, and impermissibly forces "consumers in other States [to] surrender whatever competitive advantages they may possess." *Brown-Forman v. New York,* 106 S.Ct. at 2085. S.C.Code Ann. § 61–7–100 (Law.Co-op. 1976) is, therefore, violative of the commerce clause of the United States Constitution.

Based on the foregoing Findings of Fact and Conclusions of Law, it is ORDERED that S.C.Code Ann. § 61–7–100 (Law.Co-op. 1976) be declared unconstitutional as violative of the commerce clause of the United States Constitution and that defendants be permanently enjoined from enforcing § 61–7–100 or exercising any remedy otherwise available to it because of Brown-Forman's failure to comply with that statute.