ATLANTIC STEAMERS SUPPLY CO.,
Inc., Plaintiff,

v.

INTERNATIONAL MARITIME SUP-
PLIES CO., Ltd., Defendant.

No. 66 Civ. 56.

United States District Court
S. D. New York.

June 8, 1967.

Healy & Baillie, New York City, for plaintiff, Thomas L. Rohrer, Sirius C. Cook, New York City, Raymond A. Connell, New York City, of counsel.

Javits, Trubin, Sillcocks, Edelman & Purcell, New York City, for defendant, Albert I. Edelman, Dorothy F. Gray, New York City, of counsel.

## OPINION

THOMAS F. MURPHY, District Judge.

Each party moves for directly opposite relief. Plaintiff's motion, which was served first (April 3, 1967), is made under Rule 55(b) (2) Fed.R.Civ.P. and our civil rule 8(b), for the entry of a default judgment in the sum of $181,-835.91, because of the failure of defendant to answer the complaint.

Defendant moves under Rule 12(b) Fed.R.Civ.P., to dismiss the complaint for lack of personal jurisdiction over it. To help in the resolution of both motions we ordered and held a hearing on May 29, 1967.

Jurisdiction is premised on diverse citizenship, the plaintiff being a New York corporation, while the defendant is incorporated under the laws of Switzerland.

The complaint is based upon a written contract between the parties, by the terms of which plaintiff was appointed defendant's "correspondent" and was obligated to furnish supplies and stores to certain vessels designated by the defendant. Plaintiff was to be paid by submitting to the defendant in Switzerland, the invoices for the goods supplied. The defendant in turn, would deduct 5% as its commission.

According to the certificate of the clerk of this court, he forwarded on February 3, 1966, by registered mail, copies of the summons and complaint to defendant at its address in Geneva, Switzerland. The clerk was requested to do this by the affidavit of one of plaintiff's attorneys, sworn to February 2, 1966, in which he stated that the defendant transacted business in this state at the material times set forth in the complaint and that the cause of action set forth in the complaint arose out of such conduct of business by defendant. Accordingly, he stated, plaintiff was entitled to serve the defendant out of the state under the provisions of sections 302(a) 1 and 313 of the New York Civil Practice Law and Rules. CPLR 302(a) 1 provides for personal jurisdiction over a non-domiciliary under certain circumstances, and CPLR 313 permits out of state service in the event that § 302 is applicable. Thus the plaintiff requested that the clerk address and dispatch, in accordance with Rule 4(i) (1) (D) Fed. R.Civ.P., a copy of the summons and complaint to the defendant by registered mail, return receipt requested. The clerk has also certified that no answer has been received or filed.

On March 22, 1966, defendant's former counsel served its general notice of appearance on behalf of defendant and on the same day served a notice of motion to dismiss the complaint or, in the alternative, for a stay of the action under the United States Arbitration Act, 9 U.S.C. § 3, until arbitration might be had, there be-

ing a specific provision in the agreement for arbitration. We granted the motion by order dated April 13, 1966, and the plaintiff appealed, its objection being that the arbitrator was biased. This appeal was never perfected. Eventually a stipulation was signed by the attorneys and so ordered by Judge Palmieri on December 5, 1966. It reads as follows:

"1. That, notwithstanding the order of Judge Murphy herein made on April 13, 1966, each party hereby waives arbitration and agrees that for the purposes of this action no motion for arbitration shall be deemed to have been made by defendant.

"2. That defendant's time to answer or move herein is hereby extended to and until January 20, 1967."

The former lawyers for the defendant, either misunderstanding the rules or being advised not to answer, failed to answer by the agreed date (January 20, 1967). The parties, however, were not inactive. On December 5th, the same date the stipulation was so ordered, plaintiff served a notice to take defendant's deposition in New York. In turn the defendant moved under Rule 30(b), for a protective order quashing the notice and also asking for a stay of proceedings pending its making of a motion to dismiss under Rule 12(b), because it alleged the service of process in Switzerland was in violation of the Swiss Penal Code. Plaintiff cross moved for discovery and inspection pursuant to Rule 34.

Judge McLean in a memorandum-opinion dated March 9, 1967, vacated the notice in part and fixed the place of examination of defendant at Geneva and provided for payment of counsel fees and expenses. He also denied without prejudice, plaintiff's motion under Rule 34 for discovery and inspection. Judge McLean's order on both motions was signed on March 31, 1967. The defendant argues that by virtue of Rule 12(a), it had ten days from this date to make a 12(b) motion. The defendant's 12(b) motion was served on April 4, 1967.

Not to let things quiet down too rapidly, the plaintiff then renewed, on March 31st, its motion under Rule 34 for discovery and inspection. This motion was argued on April 6th before Judge Herlands who referred it to the pretrial examiner for report. On April 14, 1967, Judge Herlands ordered the defendant to produce at Geneva, certain of its records for inspection.

On these undisputed facts it seems clear that defendant is in default. Under no theory can a Rule 30(b) motion extend a defendant's time to answer. Rule 12(a) extends the time to serve a responsive pleading only when a motion is made that is permitted under Rule 12. Rule 30(b) obviously is not Rule 12. Defendant's former counsel almost concedes this, in that he characterizes the default, if there is one, as being merely technical. Even if we were inclined under Rule 60(b) to relieve the defendant from such default because of mistake, inadvertence or excusable neglect, the defendant has failed to submit a sufficient affidavit of merits. At most, the affidavit of the former attorney for the defendant contains two or three conclusory statements alleging as defenses the breach of three covenants (which are not otherwise explained) and the recision of the contract based upon a cable by the plaintiff. This cable referred to a letter, which the defendant's counsel has in his possession, and such letter clearly shows that plaintiff was rescinding because defendant had not paid it the amount for which it is now suing.

Although under the facts of the case, the defendant is clearly in default, the question still remains whether this default can be attacked at this time on jurisdictional grounds. We think this issue can be disposed of quite readily. Rule 60(b)(4) authorizes the court to relieve a party from a final judgment if the judgment is void. If *in personam* jurisdiction over the defendant was lacking, this court has no jurisdiction to enter a judgment against it. Munter v. Weil Corset Co., 261 U.S. 276, 43 S.Ct.

347, 67 L.Ed. 652 (1923); Butterworth v. Hill, 114 U.S. 128, 5 S.Ct. 796, 29 L. Ed. 119 (1885). Accordingly, we can and should consider the defendant's Rule 12(b) motion.

This aside, we must now determine whether, either through the valid service of the summons and complaint or by some other means, this court has obtained *in personam* jurisdiction over the defendant. The resolution of this question will turn on either or both of the following considerations: (1) whether the defendant has submitted itself to the jurisdiction of this court by waiver of its right to object or (2) whether under CPLR 302 the plaintiff's cause of action arose out of the defendant's transaction of business in New York, and if it did, whether the service of process by mail in Switzerland was valid.

It is the plaintiff's principal argument that defendant, having appeared generally in the action by serving a general notice of appearance and by applying to the court by motion to either dismiss the complaint or to stay the action on the ground that the contract between the parties provided for arbitration, effectively waived any complaint it had as to personal jurisdiction over it.

█ We spend no time with the effect of a general notice of appearance. Under the Federal Rules of Civil Procedure, it is meaningless and unauthorized and does not confer upon the court, personal jurisdiction over a party. Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871 (3d Cir. 1944).

More troublesome is the effect of defendant's motion for a dismissal or a stay by reason of the arbitration agreement. Since the stay was granted, plaintiff was prohibited from proceeding in the action until the day of the stipulation, December 5, 1966, a period of almost seven months. The question posed is— does such a motion and the resulting affirmative relief, act as a waiver of a personal jurisdiction objection?

In Evans v. Hudson Coal Co., 165 F.2d 970, 972–973 (3d Cir. 1948), it was held that a motion for a stay pending arbitration is a motion under Rule 12(b) (1) for it is in effect a challenge to the court's jurisdiction over the subject matter. If granted, the court, pending arbitration, is deprived of jurisdiction of the subject matter. If *Evans* is a controlling authority, Rule 12(g) would then prohibit the defendant at this time from making any other motions set forth in Rule 12(b). Rule 12(g) provides in part that "[i]f a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted * * *." If, therefore, jurisdiction *in personam* was waived, there still remains the question whether the stipulation of December 5, was intended to eliminate such waiver.

The testimony of the two lawyers who signed the stipulation makes it clear to me that there was no intention on the part of either of them to revive the defendant's right to make a motion addressed to the court's *in personam* jurisdiction. There were many discussions over a period of many months, in an attempt to have Mr. Kulukundis resign as arbitrator and to have some other person designated in his stead. It is clear that in these discussions, the defendant was unwilling to agree to any substitute and in fact was reluctant to proceed with arbitration at all. Allegedly, it was concerned about the cost of arbitration and more importantly, about the unavailability in arbitration of the broad discovery provisions of the Federal Rules of Civil Procedure. It was in this setting that all parties agreed to waive arbitration and to proceed in this court for the resolution of their differences.

Defendant's former counsel frankly admitted that he prepared the stipulation without any research into the problem of jurisdiction, although he did say that he wanted to protect his client as much as possible. Further, we accept the testimony of plaintiff's counsel to the effect that over a period of many months, he

was assured by the defendant's counsel that he had no intention of raising any question about personal jurisdiction. This, coupled with the general notice of appearance originally served and filed and defendant's former counsel's apparent unfamiliarity with the complexities of Rule 12, all tend to negate any claim on defendant's part of its intention to preserve or recreate its right to make a motion addressed to the court's jurisdiction over its person.

Accordingly, we adopt the interpretation of plaintiff's counsel as to the meaning of the stipulation prepared by defendant's former counsel, viz., that it had for its purpose two objectives (1) to effectively waive arbitration and thus change the terms of the original contract and (2) to exetnd defendant's time to answer or move with regard to the complaint. The inclusion of the word "move" was not intended to include any 12(b) motion.

Assuming we are in error in our interpretation of the meaning of the stipulation and that it in fact was intended to restore defendant to its position prior to the motion for a stay pending arbitration, we approach the merits of the basic motion, viz., whether or not the service of the summons and complaint on the defendant in Switzerland gave this court *in personam* jurisdiction.

Because the affidavits were far from clear on the important issues of "doing business" and the "transaction of business," we took testimony on both of these questions. A substantial part of plaintiff's proof related to the defendant's doing of business, as that phrase was construed in the leading case of Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915 (1917), and was developed along two separate lines, first with regard to the activities of the defendant's subsidiary International Maritime Supplies (USA) Inc. and secondly to the actual activities of the defendant itself in New York.

International Maritime Supplies (USA) Inc., a wholly owned subsidiary of the defendant, attempted, without too much success over a period of three years, commencing in April 1961, to carry on certain activities in New York on behalf of the defendant, particularly with reference to a plastic product manufactured in New Jersey by Herculite Protective Fabrics, Inc. It had only one employee, a Mr. Musas, located in a very small office at 80 Broad Street. All of the salary of Mr. Musas, the rent for the office and other expenses were paid by the defendant. Although International Maritime Supplies (USA) was not authorized to do business in New York, we are satisfied that it was doing business, as that term was defined in *Tauza,* supra, for and on behalf of the defendant, particularly in supplying shipping companies with the Herculite fabric at defendant's special instance and request and for its account. Admittedly it went out of business in August of 1963, nearly three years before the summons and complaint were served in this action.

There was also evidence at the hearing, tending to show that in the year 1961, after plaintiff and defendant had entered into their contract, the defendant, through its director, Mr. Goldsmidt, entered into other contracts in New York with at least four shipowners under the terms of which the shipowners agreed to buy their supplies from the defendant. Admittedly none of these contracts forms any basis for the plaintiff's complaint in this case.

We do not reach the question of whether the doing of business by the defendant's agent, International Maritime Supplies (USA) Inc. or by the defendant itself, between 1961 and 1963, can be the basis of *in personam* jurisdiction in an action commenced in 1966, because we are satisfied that CPLR 302(a) 1 applies in any event.

In his original affidavit in opposition to the defendant's motion to dismiss, Barnet Liss, the treasurer of plaintiff, swore that the contract sued upon was signed by him and by the defendant's principal officer, Rappaport, in New York City on March 27, 1961. Although the argument on the motion was held

on May 2nd, no affidavit on behalf of the defendant contradicting this allegation was submitted. On the hearing of May 29, 1967, Mr. Liss again swore to such a fact, and again the defendant failed to come forth with any contradictory evidence. It was only on June 5th, when we were supplied with additional briefs, that the defendant offered, without permission, a paper entitled "affidavit," which was signed by Mr. Rappaport, the managing director of the defendant.

Although this affidavit was submitted without permission and filed at a time long after the argument of the motion, and after the hearing was ordered by this court on May 12, 1967, we have considered it and find that it does not contradict the fact that the contract was signed in New York by Rappaport and Liss on March 27th. The most it says is that Rappaport signed "the appendix and the handwritten addendum" in Switzerland.

As further proof that the contract was signed in New York our attention has been called to the appendix to the contract which was prepared by the defendant. It is entitled: "Appendix to letter of appointment signed this 27th day of March 1961 * * *." and at the end reads: "the parties have agreed and signed this 27th day of March 1961."

In addition to the contract being signed in New York by the managing director of the defendant, the proof showed that the next day, March 28th, while Mr. Rappaport was still in New York, the plaintiff sold and delivered to the defendant, its Kulukundis accounts receivable in the amount of $193,809.93; that in June of 1961 Mr. Goldsmidt, a director of the defendant company, was in New York and with the aid of the plaintiff's president, secured the four contracts with New York based steamship owners heretofore discussed. This activity indicates that the plaintiff was complying with Clause 6 of the appendix to the contract, which required it to do everything in its power to solicit business for the defendant. In return, it was to receive a commission on newly signed contracts. In addition, Mr. Liss testified that Mr. Rappaport came to New York in connection with the business of the plaintiff as defendant's correspondent on three or four occasions thereafter.

At the time of the commencement of this action, section 302 of the New York Civil Practice Law and Rules provided in part as follows:

"(a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

"1. transacts any business within the state * * *."

Although the New York Court of Appeals in the leading case of Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E. 2d 68 (1965), was not faced with the question of whether the mere execution of a contract in New York by a non-domiciliary, in the absence of other activities, would satisfy CPLR 302(a) 1, it did not foreclose this possibility.

After reciting the different activities of the non-domiciliary in New York, one of which was the execution of a supplementary contract, the court stated: "We need not determine whether any one of the foregoing activities would, in and of itself, suffice to meet the statutory standard; in combination they more than meet that standard." 15 N.Y.2d at 458, 261 N.Y.S.2d at 19, 209 N.E.2d at 76.

At least one lower court in New York has held that the signing of the contract in New York by the defendant, was in itself sufficient to give the court jurisdiction over the non-domiciliary. Patrick Ellam, Inc. v. Nieves, 41 Misc.2d 186, 245 N.Y.S.2d 545 (Sup.Ct.1963). See Iroquois Gas Corp. v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494 (Sup.Ct. 1964), aff'd, 23 A.D.2d 823, 258 N.Y.S.2d 376 (4th Dept. 1965).

Whether or not the signing of the basic contract in New York by itself would be sufficient in this case we need not determine (although we feel that it would), since we have in combination, as outlined above, sufficient activities to meet the statutory standard.

In United States v. Montreal Trust Co., 358 F.2d 239, (2d Cir.), cert. denied, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966), our Court of Appeals, though indicating that the mere "formal act of executing a contract in New York, by itself, may not be wholly determinative of the question of jurisdiction", 358 F.2d at 243, referred to its opinion in Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2d Cir. 1965), where Judge Waterman writing for the court "recognized that if negotiations had taken place in New York in furtherance of the contract, New York would then be justified in asserting its jurisdiction." 358 F.2d at 243.

In the recent case of Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir. 1967), it was held that the presence in New York of defendant's high level agent and officer on three separate occasions over a period of two months, to negotiate a contract with the plaintiff, was a sufficient transaction of business, despite the fact that the contract was signed in New Orleans by the defendant and then subsequently executed in New York by the plaintiff.

The above cases, in our opinion, are indications of how liberally section 302(a) 1 should be construed. Accordingly, we hold that the defendant is personally subject to our jurisdiction.

The only other objection that has been raised stems from a translation of a letter from the Division of Police of the Swiss Federal Department of Justice and Police dated March 29, 1966. This letter stated that there is no treaty for reciprocal legal process between Switzerland and the United States and, therefore, the rule is, that in Switzerland the assistance of the diplomatic branches of the government must be requested when legal process is to be served. It continued, saying that notification by post is therefore equivalent to an official act on the foreign territory which may appear as an encroachment on Switzerland's sovereignty.

The effectiveness (assuming it has some status) of the letter is lost because it concludes that "despite the opposition of the Swiss authorities to the serving of notice by post, nothing prevents the American courts, if their law finds a postal notification sufficient, from considering the writ in question as having been duly served on its addressee." A second letter from the Division of Police, dated April 14, 1967, reasserts this conclusion and we adopt it as being a correct statement of the law.

Accordingly, we find that service according to Rule 4(i) (1) (D), Fed.R.Civ. P., was valid and sufficient.

Defendant's motion under Rule 12(b) is denied and plaintiff's motion for a default judgment is granted.

Settle orders.