Charles W. NORTH, Appellant,

v.

Gene A. BUDIG, President, West Virginia University; Joseph C. Gluck, Harold J. Shamberger, Andrew L. Clark, Earle T. Andrews, Amos A. Bolen, F. L. Blair, Sue Seibert Farnsworth, Paul J. Gilmer, Edward H. Greene, Russell L. Isaacs, Albert M. Morgan, I. D. Peters, Daniel B. Taylor, Perry F. Watson, III, Ben L. Morton, John E. Amos, Frederick P. Stamp, Jr., Okey L. Patterson, Elizabeth H. Gilmore, David B. Dalzell, Appellees.

Charles W. NORTH, Appellant,

v.

Gene A. BUDIG, President of West Virginia University; Joseph C. Gluck; Harold J. Shamberger; Andrew L. Clark; Earle T. Andrews; Amos A. Bolen; F. L. Blair; Sue Seibert Farnsworth; Paul J. Gilmer; Edward H. Greene; Russell L. Isaacs; Albert M. Morgan; I. D. Peters; Daniel B. Taylor; Perry F. Watson, III; Ben L. Morton; John E. Amos; Frederick P. Stamp, Jr.; Okey L. Patterson; Elizabeth H. Gilmore; and David B. Dalzell, Appellees.

Nos. 79–1767, 80–1120.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1980.

Decided Jan. 9, 1981.

Edgar F. Heiskell, III, Morgantown, W. Va. (Haden, Heiskell & Dyer, Morgantown, W. Va., on brief), for appellant.

Richard E. Hardison, Deputy Atty. Gen., Charleston, W. Va. (Chauncey H. Browning, Atty. Gen., Charleston, W. Va., on brief), for appellees.

Before BRYAN, Senior Circuit Judge, and HALL and MURNAGHAN, Circuit Judges.

K. K. HALL, Circuit Judge:

Charles W. North appeals two injunctive orders of the federal district court which have restrained a state trial court from: (1) reinstating him; and (2) reviewing his expulsion as a student from the West Virginia University School of Medicine. North primarily challenges these orders on the grounds that they are in violation of the federal anti-injunction act, 28 U.S.C. § 2283, and that the district court was required to abstain from deciding the underlying issues of state law under the *Pullman*[1] abstention doctrine. We agree with the appellant that the district court should have abstained and therefore vacate the injunctive orders of the federal court and remand the case with instructions.[2]

## I. Background

North, a student in good standing after two years at the West Virginia University

---

1. This particular abstention doctrine was first established in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

2. Since we dispose of the case on the basis of the abstention issue, we need not address the applicability of the anti-injunction act. How-

ever, we note that under *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), an action pursuant to 42 U.S.C. § 1983 is an authorized exception to the ban on federal injunctions under 28 U.S.C. § 2283. *See also, Gibson v. Berryhill*, 411 U.S. 564, 573, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488 (1973).

School of Medicine, was notified in December, 1975, that he was being accused of falsely certifying information contained in his application for admission.[3] Thereafter, in January, 1976, the University's Committee on Student Discipline conducted a hearing on these charges, at which time North objected to the proceedings on the grounds that: (1) the University rules and regulations did not apply to him prior to the time he was a student; (2) his actions did not constitute "disorderly conduct" under the University regulations; and (3) he was denied the right to have counsel present at the hearing. The committee overruled these objections and recommended to the University President that North be expelled.

In February, 1976, the University President notified North of his expulsion, and the action was promptly appealed to the Board of Regents, which upheld the expulsion in its June, 1976, decision. Shortly thereafter, North filed a petition for a writ of certiorari in the Circuit Court of Kanawha County, West Virginia, to review the administrative decision.[4] That court denied the writ for failure to establish a *prima facie* case warranting judicial review. The Supreme Court of Appeals of West Virginia, holding that North had adequately stated grounds for award of the writ, reversed and remanded the case to the lower state court to grant an evidentiary hearing on the matter.[5] In April, 1977, the state circuit court held that the refusal to allow North's counsel to be present at the hearing before the Committee on Student Discipline in January, 1976, violated his right to due process and ordered that North be reinstated.

This victory was short-lived, however, when almost immediately the University notified North that another hearing before the Committee on Student Discipline would be held in June, 1977, regarding the earlier charges. North was also informed that counsel of his choice would be permitted to attend the proceeding. After the completion of the scheduled hearing, which North's counsel attended, a recommendation for expulsion was once again forwarded to the University President, who once again notified North that he was expelled.

Instead of again appealing this decision through the administrative route to the Board of Regents, North's attorney quickly filed suit in federal district court under 42 U.S.C. § 1983, seeking injunctive relief and damages. The district court granted North's request for a temporary restraining order and scheduled a date for an evidentiary hearing on the motion for a preliminary injunction. After the taking of evidence in July, 1977, the district court denied the motion for preliminary injunction in its order of January 10, 1978, and left the case for a final resolution on the merits.

In December, 1977, and prior to entry of the district court's order denying the request for a preliminary injunction, North turned again to the administrative route and appealed his expulsion to the Board of Regents which for the second time upheld his expulsion on February 7, 1978. Two weeks later, North again sought a writ of certiorari in the state circuit court, which writ was granted on March 10, 1978. Pursuant to the certiorari statute, the circuit court, without any inquiry into the merits of the case, held that North stated a *prima facie* case and ordered that he be immediately reinstated pending review of the ex-

3. Under the pertinent University rules and regulations in effect at that time, North was entitled to a hearing before the Committee on Student Discipline, which consisted of three faculty members and two university students. This committee would then forward its findings and recommendation to the University President for final action. An appeal from the decision of the University President was to be addressed to the Board of Regents for final administrative review. The Board is a state agency created pursuant to West Virginia Code § 18–26–1 *et seq.* to supervise and manage the policies and affairs governing the state colleges and universities.

4. The granting of a writ of certiorari to review such administrative decisions is governed by West Virginia Code § 53–3–1 *et seq.*

5. This decision is reported as *North v. Board of Regents*, 233 S.E.2d 411 (W.Va.1977).

pulsion decision.[6] The federal court first became aware of this state court proceeding on April 6, 1978, when the Board sought an order enjoining the state court from reinstating North at the medical school. After a hearing on the motion, the district court granted the injunction because the state court's order "was in direct contravention of the findings of this Court and as such violates the judgment and jurisdiction of this Court." No further proceedings then occurred in either state or federal court for over a year.

In July, 1979, North requested the state court to order certification of the administrative record so that the decision could be reviewed pursuant to the writ of certiorari. In September, 1979, the state court, which had only been restrained by the federal court from enforcing the reinstatement portion of its March, 1978, order, ordered the defendants to certify the record of the proceedings to it.

In October, 1979, the district court denied North's pending motion which sought the vacation of its earlier April, 1978, injunction prohibiting his reinstatement. The appeal in No. 79–1767 challenges this denial.

In response to the certification order of the state court, counsel for the Board then petitioned the federal court to expand its earlier injunction to also encompass this certification requirement. On January 9, 1980, the district court modified its original injunction so as to restrain the state court "from further proceeding in any manner with respect to its order of March 10, 1978, pending further consideration by this Court of the issues herein and a hearing upon the merits." The appeal in No. 80–1120 resulted from that order.

## II. *The Abstention Issue*

Even though the appellant initiated the federal court action, he now contends that the issues raised in his § 1983 complaint are matters of first impression under state law and should be resolved by the state courts. Thus, he states that the dis-

trict court should not enjoin state court proceedings but should itself abstain from interpreting state law under the rationale set forth in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

We agree with the appellant that the district court should have abstained under the facts here present. As stated by the Supreme Court regarding abstention in a § 1983 suit, "[w]here strands of local law are woven into the case that is before the federal court, we have directed a District Court to refrain temporarily from exercising its jurisdiction until a suit could be brought in the state court." *McNeese v. Board of Education for Community Unit School District 187*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), citing *Pullman, supra*. In the case *sub judice*, the "local law" which is interwoven into this controversy pertains to the scope and applicability of the university regulations under which North was expelled. The federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law questions since a decision by the local tribunals could afford North an adequate remedy and thus preclude the possibility that the federal court might unnecessarily decide a constitutional issue. *Pullman, supra.* Accord, *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); 1A, Pt. 2 Moore's Federal Practice ¶ 0.203[1].

As earlier decisions of this court have clearly indicated, the pendency of state proceedings is an extremely important factor in determining whether abstention by a federal court is appropriate. *E. g., Wilkins v. Rogers*, 581 F.2d 399, 404 (4th Cir. 1978); *Lynch v. Snepp*, 472 F.2d 769, 774 (4th Cir. 1973). The orders of the dis-

---

6. West Virginia Code § 53–3–6 provides in part that upon the posting of a bond, "the writ of certiorari shall operate to stay all proceedings upon the judgment or order removed by the writ ... until the final determination by the circuit court...."

trict court enjoining the circuit court from performing its review of North's expulsion, in light of the purpose and reasoning of the *Pullman* abstention doctrine and our own precedent, constituted an improper intrusion into the affairs of the state tribunal. Thus, under the facts of this case, the district court should neither have granted its original injunctive order nor modified and expanded it to restrain the Circuit Court of Kanawha County from proceeding under the certiorari statute. This is especially the case where the state's highest court had previously acknowledged that the certiorari procedure was the proper legal vehicle by which to challenge the administrative decision expelling North from medical school.

### III. *Conclusion*

Based on the principles underlying the *Pullman* abstention doctrine, as adopted by this court in such decisions as *Wilkins* and *Lynch, supra,* we hold that the present factual circumstances require that the district court's injunctive orders of April 6, 1978, and January 9, 1980, be vacated. Hence, the state court is therefore free to review North's expulsion. The Board may challenge the validity of the award of the writ of certiorari and North's likely reinstatement under that statute by more properly resorting to the state tribunals rather than the federal court.

Accordingly, the district court is directed to immediately vacate the aforementioned orders, and the court is instructed to abstain from further proceedings in this matter pending resolution of the necessary state-law issues by the appropriate state court. The district court should also retain jurisdiction over any remaining federal causes of action.

*REVERSED AND REMANDED WITH INSTRUCTIONS.*

MURNAGHAN, Circuit Judge, concurring:

With all that Judge Hall has written, I am in agreement. My filing of a concurring opinion is simply to amplify the provision for retaining jurisdiction appearing at the end of the opinion. Among other authority not precluded by any provision of or implication deriving from our opinion, would be the power of the United States district court to enter an order requiring that North not seek to compel issuance by the University to him of a certificate of graduation, decree, diploma, or other similar document, unless and until the state court finally vacates and voids the second expulsion of June, 1977.

North had been granted admission as a student to the University, and so the automatic statutory stay entitled him to reinstatement to the student status. North, however, has never enjoyed the status of a graduate, and the expulsion disqualified him from achieving it. Maintenance of the status quo, pending resolution of the litigation in the state courts, calls for denial of a certificate, decree, diploma, or similar document unless and until the disqualification of North is ended by the ultimate outcome of the law suit.