EDUCATIONAL SERVICES, INC., A Maryland Corporation doing business as International Montessori Society and Lee Havis, Appellants,

v.

MARYLAND STATE BOARD FOR HIGHER EDUCATION; Seven (7) Members of the Maryland State Board for Higher Education, in their official capacities: Richard R. Kline; J. Harrison Ager; Lucy Keker; Thomas Maddux; Mary L. Nock; Louis Randall; Gertrude Crist; Sheldon Knorr, Commissioner, Maryland State Board for Higher Education, Joseph Durham, Staff Member, Maryland State Board for Higher Education, Robert Rogers, Staff Member, Maryland State Board for Higher Education, Clarence Baseman, Staff Member, Maryland State Board for Higher Education, Maryland State Board of Education, David Hornbeck, Superintendent of Schools—Maryland State Board of Education, Appellees.

No. 82–1098.

United States Court of Appeals, Fourth Circuit.

Argued March 9, 1983.

Decided June 23, 1983.

Lee Havis, Silver Spring, Md., for appellants.

Ellen M. Heller, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen. of Maryland, Susan B. Blum, Susan J. Mathias, Asst. Attys. Gen., Judith A. Wood, Staff Atty., Baltimore, Md., on brief), for appellees.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and ALDRICH,* Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Faced with a broad-ranging and intricate constitutional challenge to Maryland's certification process governing the operation of a private teacher training school, the district court abstained, dismissing the suit. Plaintiffs appeal, contending principally that this suit is not among the various situations in which abstention is warranted. We agree. Plaintiffs also contend that they were entitled to a default judgment. Although we affirm the district court's denial of plaintiffs' motion for default judgment, we reverse the judgment of dismissal and remand to the district court to allow the case to proceed. We do not pass upon plaintiffs' contention that they are entitled to interim injunctive relief.

## I.

This suit stems from efforts by Lee Havis, the owner and executive director of co-plaintiff Educational Services, Inc., to obtain a certificate of approval from the Maryland State Board for Higher Education (Board) for the operation of a post-secondary teacher training school under the name International Montessori Society (IMS).[1] Havis, who also owns a private tutoring school named Capital Tutoring, Inc., first applied for the Board's certificate in February, 1980. After extensive administrative review, the Board, on July 2, 1981, affirmed as final the consistent denial of a certificate of approval for operation of the school. Havis thus unsuccessfully exhausted all administrative remedies.

On September 28, 1981, Havis *pro se* brought this action seeking declaratory and injunctive relief under 42 U.S.C. § 1983, alleging the denial of First and Fourteenth Amendment rights in the Board's[2] refusal to certify the IMS. Although couched in language invoking a variety of constitutional provisions, at bottom Havis alleges two principal theories of unconstitutional action. His principal claim is that the certification powers delegated to the Board under §§ 12–201 *et seq.*, Ann. Code of Maryland, Education (1982 Cum.Supp.), permit the Board unconstrained discretion to deny certification to unconventional or controversial applicants.[3] Havis's second major contention is that the statutory exemption for religious non-public "noncollegiate educa-

---

* Honorable Bailey Aldrich, Senior United States Circuit Judge for the First Circuit, sitting by designation.

1. Because of the identity of interest between them, we will refer simply to "Havis" to designate plaintiffs either individually or collectively.

2. Named as defendants were the Board, its seven members in their official capacities, the Board Commissioner and various staff members, the state Board of Education, and the state Superintendent of Schools. The defendants will be referred to simply as the "Board."

3. Havis alleges that he is such an applicant in that the proposed IMS curriculum is "unique in application and approach, outside the normally accepted standards and content of otherwise comparable conventional or traditional curricula." In particular, Havis asserts that the language of § 12–203(b), requiring the Board to evaluate the "facilities, conditions of entrance and scholarship, *and educational qualifications and standards*" (emphasis added) of IMS, admits of abuse through academic content censorship, and that such a standardless and subjective review of content occurred in the denial of his application.

Havis also asserts that the regulations promulgated pursuant to § 12–201—Code of Maryland Regulations §§ 13A.50.01 *et seq.*—do not confine the statutory discretion of the Board, but rather institutionalize it. Using its discretion under these regulations, the Board referred Havis's application for comment and evaluation to various educators, among them practitioners of the Montessori educational philosophy at other institutions employing the Montessori label in their titles.

tional" institutions found in § 2–206(e)(4) of the Education Article violates the Establishment Clause because secular non-public schools such as Capital Tutoring remain fully subject to Board certification.[4]

On the basis of these allegations and supporting affidavits, Havis moved for a preliminary injunction against enforcement of the certifications laws against him. The Board in turn moved the district court to abstain from the exercise of federal question jurisdiction and to dismiss the suit.

Granting the Board's motion, the district court first concluded that the federal constitutional questions raised by Havis could be avoided by state court interpretation of the statutes and regulations called into question, and that the interpretation of those statutes and regulations was unsettled. As a consequence, the district court held the abstention doctrine enunciated in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) to be applicable. The district court further concluded that any ruling on Havis's claims would amount to federal interference with a complex state regulatory scheme, and therefore invoked the *Burford* doctrine.[5] Because it had deemed both *Burford* and *Pullman* abstention appropriate, the district court applied the harsher of

the two, and dismissed the suit. *See* 17 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 4245 (1978). Havis now appeals from that dismissal and from the denial of his earlier motion for default judgment.

## II.

The cases recognize several doctrines of abstention.[6] In considering the propriety of abstention in this case, we note initially that it lacks one predicate common to at least two varieties of that doctrine, the pendency of state judicial proceedings concerning the same matters. Thus, many of the cases relied upon by the district court or cited to us by the Board are inapposite. *See, e.g., Cox v. Planning District I Community Mental Health and Mental Retardation Services Board,* 669 F.2d 940 (4 Cir. 1982); *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 80, 95 S.Ct. 870, 873, 43 L.Ed.2d 32 (1975) (state court action begun but "abandoned" in favor of federal court action); *Kelser v. Anne Arundel County Dept. of Social Services,* 679 F.2d 1092, 1093 (4 Cir.1982) (numerous pending state court custody proceedings); *see also Fruchtman v. N.Y. State Bd. of Law Examiners,* 534 F.Supp. 692, 694–96 (S.D.N.Y. 1982) (N.Y. Court of Appeals, though acting

---

**4.** Although somewhat obtuse in alleging what harm has befallen him, inasmuch as Capital Tutoring appears to enjoy currently valid state certification, Havis points out that the regulations pursuant to § 2–206 require, *inter alia,* that teachers "in schools adhering to the Montessori philosophy" shall have both an accredited bachelor's degree and "a Montessori diploma" from a state accredited teacher training institution. C.M.R. § 13A.09.09.05(c)(2). Havis alleges that he is thereby prevented from using teachers trained in his proposed IMS training school in his tutoring school, whereas were he to operate a religious tutoring school he would be exempt from state oversight of his teachers' qualifications.

**5.** *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**6.** In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), Justice Brennan for the Court outlined the three established abstention doctrines as the *Pullman, Burford,* and *Younger* [*v. Harris,* 401 U.S. 37, 91 S.Ct.

746, 27 L.Ed.2d 669 (1971)] types, while noting that a fourth category concerned with judicial economy justified abstention in favor of ongoing state court proceedings involving issues of "extraordinary importance" in certain limited circumstances. 424 U.S. at 818–19, 96 S.Ct. at 1246–47; *see also Moses H. Cone Memorial Hospital v. Mercury Construction Co.,* —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Cox v. Planning District I Community Mental Health and Mental Retardation Services Board,* 669 F.2d 940, at 942 (4 Cir.1982). Whether this fourth category is in fact a distinct basis for abstention, or instead is more an extension of the *Younger* line premised upon the lack of federal jurisdiction to restrain good faith state criminal prosecutions into the civil area, *cf. North v. Budig,* 637 F.2d 246, 249–50 (4 Cir. 1981), the absence of "the danger of piecemeal litigation" makes that line of abstention also unavailable here. *Cone Memorial Hospital, supra,* —— U.S. at ——, 103 S.Ct. at 939, 74 L.Ed.2d at 782.

administratively, had referred plaintiff back to bar review board for further proceedings prior to initiation of federal court action). As a consequence, we have only to consider *Burford* and *Pullman* abstention, and we turn to them in that order.

## A.

### *Burford* Abstention

■ The Board urges us to adopt the proposition that, because regulation of non-public schools furthers important state educational policies, any case arising from such regulation must be considered as involving the kind of complex state regulatory scheme which merits *Burford*-type abstention. While we acknowledge the important and sensitive nature of state educational regulation, we do not see abstention as its logical entailment. The Board's position sweeps too broadly; if followed it would displace federal jurisdiction over all challenges to state educational regulation. As then Chief Judge Swygert of the Seventh Circuit noted in an analogous vein, "The fact that the alleged denial of constitutional rights is set in the context of the public education system cannot be determinative." [7] *Burford* abstention rests on additional concerns beyond the mere presence of an important state administrative regime, concerns not present here.

The salient feature in *Burford* was that, in addition to extensive state regulation of a field, "the State had established its own elaborate review system for dealing with the geological complexities of oil and gas

fields" by concentrating judicial oversight in specially authorized state courts. *Colorado River Water Conservation District, supra,* 424 U.S. at 815, 96 S.Ct. at 1245. Review by a federal court—or, indeed, by any unspecialized state court—of the administrative actions questioned in *Burford* "would have had an impermissibly disruptive effect on state policy for the management of those fields." *Id.* The premise underlying the *Burford* doctrine is that the very act of review by a court other than the one purposely made familiar with the particularly complex resource regulation issues involved would upset a carefully crafted and integrated state system. *See Alabama Pub. Serv. Comm. v. Southern Railway,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); *Colorado River Water Conservation District, supra,* 424 U.S. at 814–16, 96 S.Ct. at 1244–45; *Knudsen Corp. v. Nevada State Dairy Commission,* 676 F.2d 374, 376–77 (9 Cir.1982).

Here, by contrast, the Maryland state courts do not stand in any special relationship of technical oversight or concentrated review to the educational certification process the way the Texas or Alabama resource review courts did in *Burford* and *Alabama PSC.* Once having completed the administrative process, Havis had the opportunity to bring his constitutional challenges in state court under Maryland's Administrative Procedure Act [8]; he chose instead to file his complaint in federal court. An adjudication that the Board's actions were

---

**7.** *Drexler v. Southwest Dubois School Corporation,* 504 F.2d 836, 840 (7 Cir.1974) (in banc). Even a partial listing of cases in which federal jurisdiction was exercised over § 1983 challenges to state educational regulation of private schools would be lengthy. *See, e.g., New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey Board of Higher Education,* 654 F.2d 868 (3 Cir.1981); *Yellow Springs Exempted Village School District Board of Educ. v. Ohio High School Athletic Assoc.,* 647 F.2d 651 (6 Cir.1981) (state regulation of public and private secondary school athletics); *Surinach v. Pesquera de Busquets,* 604 F.2d 73 (1 Cir.1979); *Marlboro Corp. v. Assoc. of Independent Colleges and Schools, Inc.,* 556 F.2d 78 (1 Cir.1977); *Milwaukee Mon-*

*tessori School v. Percy,* 473 F.Supp. 1358 (E.D. Wis.1979); *cf. Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (state compulsory school-attendance statute challenged); *Rivera v. Marcus,* 696 F.2d 1016 (2 Cir.1982) (state regulation of private foster care).

**8.** *See* § 12–206(d)(1), Ann. Code of Md., Education (1978). Exhaustion of administrative remedies, of course, is not a prerequisite to the maintenance of a § 1983 action. *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

unconstitutional in any of the ways claimed by Havis will be equally disruptive of the regulatory scheme challenged whether the decision emanates from a federal or a state court. *Cf. Zablocki v. Redhail,* 434 U.S. 374, 379 n. 5, 98 S.Ct. 673, 677 n. 5, 54 L.Ed.2d 618 (1978). Federal court adjudication cannot intrusively displace that by a state court acting as "an integral part of the regulatory process", *Alabama PSC, supra,* 341 U.S. at 348, 71 S.Ct. at 767, because no such court exists in Maryland. *See* Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071, 1156 (1974). Dismissal of Havis's suit under the *Burford* rationale was therefore improper.[9]

The Board also suggests that in addition to the *Burford* doctrine, abstention follows here on the strength of our decision in *AFA Distributing Co., Inc. v. Pearl Brewing Co.,* 470 F.2d 1210 (4 Cir.1973). Unlike the case before us, however, *Pearl Brewing* involved an "exceedingly difficult and incredibly ambiguous statute" regulating the distribution and sale of alcoholic beverages. *Id.* at 1211. That statute was "recently enacted" and susceptible to multiple interpretations; which view the state courts would choose was in doubt, as the statute had never been interpreted and lacked even a guiding history of administrative application. Moreover, dismissal of the action on abstention grounds was influenced by the fact that no federal question was pled in that diversity case. Rather, a federal question was only "lurking within the statute . . . as a defense contention." *Id.* at 1214.

All of the elements converging in *Pearl Brewing* to prompt dismissal are in reality the opposite of those present here, where we face a statute first enacted in similar form some thirty-six years ago, the language of which has been upheld by the state's highest court,[10] which carries a long history of authoritative administrative construction, and which is challenged on constitutional grounds. This is not among the "relatively rare instances" contemplated by *Pearl Brewing* as a proper case for abstention.

### B.

### *Pullman* Abstention

■ The Board alternatively asks for affirmance of the district court's ruling that *Pullman*-type abstention would be appropriate in this case. To apply the *Pullman* doctrine, at a minimum it must appear that there is (1) an unclear issue of state law presented for decision (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue is "potentially dispositive". *Donohoe Construction Co., Inc. v. Montgomery County Council,* 567 F.2d 603, 607 (4 Cir.1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1148 (1978); *Cox, supra,* 669 F.2d at 942. In this case, however, the only state law questions suggested as unclear by the Board are ones either not in issue or in effect duplicative of the constitutional claims alleged by Havis.

The Board argues that an "unsettled" question is presented by the possibility that a state court hearing this matter might rule

---

**9.** The district court also supported its dismissal by reference to *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), but the narrow *Thibodaux* doctrine has no application here. *Thibodaux* is generally understood as resting on the special nature of eminent domain as a peculiarly local concern, although by any measure the case is something of an anomaly. *See* C. Wright, Law of Federal Courts 309–310 (4th ed. 1983); Field, Abstention in Constitutional Cases, *supra,* at 1150; *Crawford v. Courtney,* 451 F.2d 489, 492 (4 Cir.1971). For the same reasons, abstention here is not supported by *Kent Island*

*Joint Venture v. Smith,* 452 F.Supp. 455 (D.Md. 1978), another eminent domain case urged upon us by the Board to justify dismissal of Havis's suit. Even were the *Thibodaux* doctrine to suggest some form of abstention, by that case's own terms federal jurisdiction is retained but merely postponed pending resolution of an unclear state law issue. 360 U.S. at 29, 79 S.Ct. at 1073; *see also, Fralin & Waldron, Inc. v. City of Martinsville, Virginia,* 493 F.2d 481 (4 Cir.1974).

**10.** *See, infra,* at text accompanying note 11.

that the definitions of "noncollegiate educational institution" found in § 2–206 or "institution of postsecondary education" in § 12–201 of the Maryland Education Article do not apply to Havis's schools. Yet the Board throughout has treated Havis's schools as within those sections, and Havis has conceded that his tutoring school and teacher training center meet the statutory definitions of §§ 2–206 and 12–201 and thereby are subject to the attendant certification requirements, if valid. In short, there is no one litigating the issue which the Board suggests might somehow be found unclear. As we said in *Donohoe Construction, supra,* 567 F.2d at 607, "It is obvious that where no issue of state law exists, the federal constitutional issue cannot be avoided by 'a definitive ruling on the state issue . . . .' "

As part of its rationale for finding *Pullman* abstention appropriate, the district court looked to a different state law matter, equating an "unsettled issue" of state law with one supposedly not yet squarely presented to a state court. The court's view was that because Havis in part challenges the certification scheme as applied to him on "vagueness" grounds, there is the potential for a state court to give a narrowing construction to the statutory grant empowering the State Board for Higher Education to consider the "educational qualifications and standards" of an applicant. § 12–203(b). But challenges to state statutes on "vagueness" grounds are really of two varieties, with abstention permissible only where "the case turns on the applicability of a state statute or regulation to a particular person or a defined course of conduct". *Procunier v. Martinez,* 416 U.S. 396, 401 n. 5, 94 S.Ct. 1800, 1805 n. 5, 40 L.Ed.2d 224 (1974); *see also Public Citizen Health Research Group v. Commission on Medical Discipline of Maryland,* 573 F.2d 863 (4 Cir.1978) (abstention warranted pending state court interpretation of whether undefined statutory term "advertise" encompassed activity at issue). As already noted, there is no challenge in this case to the applicability of the implicated state statutes to Havis's activities.

The other variety of "vagueness" challenge is that present here, one in which it is the degree of discretionary authority vested in the administering state official by the empowering statute that assertedly violates due process. "In such a case no single adjudication by a state court could eliminate the constitutional difficulty. Rather, it would require 'extensive adjudications, under the impact of·a variety of factual situations,' to bring the challenged statute or regulation 'within the bounds of permissible constitutional certainty.' " *Procunier, supra,* 416 U.S. at 401 n. 5, 94 S.Ct. at 1805 n. 5 (citations omitted). No single interpretation of the statutory language questioned by Havis could conceivably narrow the Board's criteria in evaluating an applicant's "educational qualifications and standards" to the point where the constitutional issue, whatever its merits, could be avoided.

Moreover, the state courts cannot be expected to undertake any such course of discretion-narrowing interpretation. The Maryland Court of Appeals has already held the virtually identical language in the precursor statute to § 12–201 to be sufficiently definite and unambiguous to permit it to stand as proper legislative guidance to the State Board for Higher Education. *Schneider v. Pullen,* 198 Md. 64, 81 A.2d 226 (1951). In *Schneider,* a barber challenged the language about which Havis complains as an unlawful delegation of legislative power "because it provides no definite standards by which the State Superintendent of Schools is to be guided in issuing his regulations and in granting permits." The Court of Appeals rejected the argument and approved the reasonableness of the broad language given the purpose of the statute:

> To cover all types of trade schools, as well as other educational institutions, there could be no one set of standards prescribed, but that need not invalidate the delegation of power if the general standards, broad though they may be, are

sufficiently explicit to limit the State Superintendent of Schools in his actions, and not permit him to exercise arbitrary power. The wording, already quoted, from subsection (b) is that the schools must have conditions of entrance, scholarship, educational qualifications, standards and facilities adequate and appropriate for the purposes, program, training and courses to be taught.

\* \* \* \* \* \*

We think the standards prescribed for so broad a subject are sufficiently definite for us to hold that the statute is not subject to constitutional objection on this ground.

81 A.2d at 229. In light of *Schneider,* there is no state law basis for deciding this case that avoids the federal constitutional issue raised.[11] *Pullman* abstention therefore also was improper.

### III.

■ Citing the requirement of Rule 12(a), F.R.Civ.P., that the defendant "shall serve his answer within 20 days after the service of the summons and complaint upon him", Havis argues that the Board was in default because no "answer" was served as of the time he moved for default judgment roughly 40 days after service of the summons and complaint.[12] The Board responds by noting the extensive discovery requests that accompanied service of the complaint and motion for preliminary injunction, as well as by pointing out that its response in opposition to the motion for preliminary injunction set forth most of its defense so that it was tantamount to the answer required by the Rules.

We need not here depart from the general rule that a motion or a response to one is not deemed a "responsive pleading" for the purposes of the time limits set out in the Rules.[13] *See generally* 5 Wright & Miller, Federal Practice and Procedure: Civil § 1348, pp. 536–37 (1969); *cf. Atlantic Steamers Supply Co. v. International Maritime Supplies Co., Ltd.,* 268 F.Supp. 1009, 1011 (S.D.N.Y.1967) (defendant's time allotted for service of responsive pleading ex-

11. There is certainly no ambiguity in the statutory exemption from certification requirements of religious schools, § 2–206(e)(4), which Havis also challenges. The situation as to this section is thus like that addressed in *Harman v. Forssenius,* 380 U.S. 528, 535, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965), where the Supreme Court stated: "If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction." (citation omitted) Moreover, even if the Board's statutory discretion in the evaluation of Havis's educational qualifications and standards could be narrowed and the attendant constitutional issue thereby avoided through a state court adjudication, the constitutionality of this religious exemption could not, and a constitutional issue central to this case would remain. As the Supreme Court stated in rejecting a belated proffer of a state law issue as "unsettled", "abstention would be pointless" where "the state issues put forward ... are plainly insufficient to merit such treatment." *Mayor v. Educational Equality League,* 415 U.S. 605, 628, 94 S.Ct. 1323, 1337, 39 L.Ed.2d 630 (1974).

12. Havis filed his complaint with the district court on September 28, 1981, and contemporaneously filed his motion for a preliminary injunction. On October 19, 1981, the Board filed a response in opposition to the preliminary injunction motion, but did not file anything styled as an answer. On November 9, 1981, Havis moved for default judgment. The motion was denied the next day.

Although Havis provided the district court with postal return receipts for all defendants stamped no later than October 3, 1981, the court noted that its denial of the motion for default judgment was "for failure to prove service." However, Rule 55(a) permits proof of a party's failure to plead or defend to be "made to appear by affidavit or otherwise". In addition to the postal receipts, the Board's own response to Havis's preliminary injunction motion was filed on October 19, showing that the Board had been served more than 20 days prior to the motion for default judgment. We will therefore assume that Havis had properly proven that service had occurred more than 20 days before he moved for default judgment on November 9.

13. Of course, Rule 12 permits certain defenses to be asserted by motion, which alters the time for filing an answer.

tended only by making of motion under Rule 12). For, even had the district court granted Havis's motion, under our standard for striking a default judgment the district court here would have been virtually compelled to do so upon a Rule 60(b) motion by the Board. *See United States v. Moradi,* 673 F.2d 725, 727 (4 Cir.1982). We therefore find no abuse of discretion in the denial of the motion for default judgment.

### IV.

Finally, Havis contends that we should direct the district court to grant plaintiffs a preliminary injunction to prevent defendants from enforcing the Maryland statutes against them. Despite having developed a fairly extensive record at the preliminary injunction hearing and other proceedings, the district court never ruled on the merits of Havis's preliminary injunction motion. Instead, the district court found "that the abstention issue raised by the defendants is dispositive" and dismissed the action. We thus lack any written findings of fact and conclusions of law to review, *see* Rule 52(a), F.R.Civ.P., and so have no basis upon which to consider the merits of the motion. In reversing the district court's decision to abstain, we express no opinion on the substantive issues raised by Havis. Those should be decided by the district court in the first instance.

AFFIRMED IN PART

REVERSED IN PART.